LENA C. YOUNG, as Administratrix of the Estate of RAYMOND YOUNG, Deceased, Plaintiff, *v.* NEW YORK STATE ELECTRIC & GAS CORPORATION et al., Defendants.

MARJORIE S. YORK, as Administratrix of the Estate of HAROLD SAMPSON, Deceased, Plaintiff, *v.* NEW YORK STATE ELECTRIC & GAS CORPORATION et al., Defendants.

Supreme Court, Trial Term,* Steuben County, March 31, 1945.

* See Special Rules for Seventh Judicial District in which it is provided that, except in the county of Monroe, contested motions may be heard on any day of the Trial and Equity Terms in the county in which the action is triable. — [REP.

*W. Earle Costello* for defendants.

*Albert E. Hollis* for plaintiffs.

VAN VOORHIS, J. The complaints in these actions are identical except as to damages so that it will be unnecessary to distinguish between them for the purposes of these motions. Both are death actions. On September 19, 1942, in the course of their regular trade, the plaintiffs' intestates are alleged to have been cleaning out a water well located on lands of one Bert Ostrander by means of a portable boom or derrick attached to a motor truck. The boom came in contact with an electric wire carrying a current of 4,600 volts maintained by defendant New York State Electric & Gas Corporation. Both men were electrocuted. This wire is stated to have been a spur off from the main power line and to have consisted of a single wire. The defendant electric company is charged with having been

negligent in using an uninsulated wire strung without warning signs in a place where it would reasonably be assumed that a person would be working, under circumstances unlikely to disclose the danger. It is assumed for the purpose of these motions that the complaints sufficiently allege negligence.

After these fatalities a representative of defendant Employers Liability Assurance Corporation, Limited, an insurance carrier indemnifying the electric company, procured releases from each administratrix upon payment to each of $750.

The theory of the actions is not negligence but fraud. The complaints allege that in obtaining these settlements the adjuster for the defendant liability insurance company represented to the administratrices that he was an employee of the defendant electric company, that the deaths of the two men were entirely due to their own faults and occurred without negligence or fault on the part of the electric company which was in no way liable under the laws of New York, but that this company felt sympathetic toward their widows and desired to make a gift of $750 to each one to help defray expenses. It is further alleged that the said representations so made were known by the said adjuster and both defendants to be false when made, and were uttered with the intent to deceive and defraud the administratrices. It is further stated in the case of each administratrix, that she did not know the truth, but by reason of shock and grief was unable to ascertain the truth of the situation, and believed and relied upon the said representations and was thereby induced to and did sign the administration papers in Surrogate's Court and the releases of claim.

The actions are brought under the second theory stated in *Urtz* v. *N. Y. C. & H. R. R. R. Co.* (137 App. Div. 404, later appeal 140 App. Div. 915, revd. on other grounds 202 N. Y. 170), i.e., an affirmance of the compromise agreement, retaining the money received under it, but seeking in addition to recover damages for the fraud.

The defendants in applying for a dismissal of these complaints as insufficient in law do so mainly upon the ground that the statement of the adjuster that there was no negligence or fault on the part of the electric company was a mere expression of opinion and not the misrepresentation of a present fact, citing *Bareham & McFarland, Inc.,* v. *Kane* (228 App. Div. 396).

The rule is not that in order to make out a cause of action there must in every case be a misrepresentation of fact. " It is equally well settled that where there is a mistake of law on one side, and either positive fraud on the other, or inequi-

table, unfair and deceptive conduct, which tends to confirm the mistake and conceal the truth, it is the right and duty of equity to award relief. All the cases which deny a remedy for mere mistake of law on one side are careful to add the qualification that there must be no improper conduct on the other." (*Haviland* v. *Willets et al.*, 141 N. Y. 35, 50.) The distinction between the law and equity sides of the court concerning what constitutes fraud in this respect has almost disappeared. Even stronger is the holding in *Berry* v. *A. C. Ins. Co.* (132 N. Y. 49) which held, as stated in the syllabus, that there was " * * * a surrender of legal rights intentionally induced by false representation as to the law; that this constituted fraud." Concerning that case it was said by Justice MORSCHAUSER in *Parton* v. *Metropolitan Life Insurance Co.* (129 Misc. 493, 495) : " The proof herein warrants the setting aside of the release herein. It is clear that the defendant schemed for a release and obtained it. (*Whelan* v. *Whelan*, 3 Cow. 537; *Berry* v. *American Central Ins. Co.*, 132 N. Y. 49; *Hudson* v. *Glens Falls Ins. Co.*, 218 id. 133, 138). The *Berry* case has been frequently cited with approval since it was decided many years ago." (See, also, *Snyder* v. *Ash,* 30 App. Div. 183, 184, 185; *Simon* v. *Supreme Council,* 91 App. Div. 390, 393; *Eysaman* v. *Nelson,* 79 Misc. 304, 327, 328.)

In the *Bareham & McFarland, Inc.*, case (*supra*, pp. 400–401) relied on by defendants, the court sustained the pleading, what was written in the opinion being directed mainly toward the guidance of the trial court at the trial. The court said: " We have taken these allegations at their face value. We must do that on a motion of this character. When it comes to the trial of the action, an entirely different picture may be presented. It is one thing to make an allegation; it is another to prove it. We are not concerned at this time with any difficulty which the defendant may encounter in proving his counterclaim. By what has been said we do not intend to pass upon the question of fraud as it may be presented on the trial."

It would be enough to sustain the complaints that they allege that defendants knew the representations of nonliability to be false when they were made; the adjuster's statement that plaintiffs' intestates were negligent and that the electric company was free from negligence referred at the least to mixed questions of law and fact, and if these statements were known to be false when made, the complaints should be sustained under *Adams* v. *Gillig* (199 N. Y. 314) and similar cases. Plaintiffs do not appear to rely completely upon that doctrine but upon

the slightly different rule in *Berry* v. *A. C. Ins. Co.* (*supra*) that a misrepresentation of law relied on by one side is enough if coupled with overreaching conduct and bad faith in the other party. There is enough in the complaints to uphold their sufficiency without the necessity of determining in advance of the trial precisely how much of their allegations plaintiffs must prove in order to establish prima facie cases.

The New York State Electric & Gas Corporation, which has been referred to for convenience as the electric company, is not entitled separately to a dismissal on the pleadings. It is alleged that this corporation had procured liability insurance policies from the other defendant covering this electric line, and that the adjuster acted for and on behalf of both defendants in obtaining these releases which ran to and inured to the benefit of the electric company. Obviously such an insurance policy constitutes the carrier's adjuster an agent of the insured for this purpose. Even if it did not do so, the electric company in relying on the releases is retaining the benefit so obtained. Perhaps the adjuster was not authorized in advance to commit fraud. Even so, it is the well-settled rule in this State that a principal cannot receive the fruits of a bargain without adopting the instrumentalities employed by his agent in bringing it to a consummation, and so is bound by false representations of his agent, although ignorant thereof and intending no fraud. (*Mayer* v. *Dean et al.*, 115 N. Y. 556; *Angerosa* v. *White Company*, 248 App. Div. 425, affd. 275 N. Y. 524.)

The Surrogate's orders approving the settlements do not bar the prosecution of these actions. If the actions were for rescission or based upon rescission, it might be necessary for plaintiffs first to have the orders of the Surrogate revoked or modified. (*McNamara* v. *Eastman Kodak Co.*, 232 N. Y. 18, 37.) Here rescission is not involved; plaintiffs have affirmed the settlements and elected to sue for damages claimed to have resulted from the fraud under the " second " alternative mentioned in *Urtz* v. *N. Y. C. & H. R. R. R. Co.* (137 App. Div. 404, *supra*).

The motions to dismiss the complaints are denied, with $10 costs in each instance.