## LAKOSCHOWSKY v. UTOPIA LAND CO.

(Supreme Court, Appellate Division, First Department. May 8, 1908.)

VENDOR AND PURCHASER—BREACH OF CONTRACT—RIGHT OF PURCHASER TO RE-
COVER PAYMENTS.

Plaintiff bought land of defendant by contract providing that he should make monthly payments of $5, and that, if he failed to do so defendant might consider the contract forfeited. After he had made certain payments, defendant refused to accept payments tendered, telling him he would be notified when it was ready to receive further payments. *Held*, that defendant did not thereby breach its contract, but, at most, suspended plaintiff's obligation to make further payments till notified; and having received such notice, and failed to make payments, for which he was in default, he could not recover payments made by him.

Appeal from Appellate Term.

Action by Abraham Lakoschowsky against the Utopia Land Company. From a determination of the Appellate Term affirming a judgment of the Municipal Court for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Emanuel Jacobus, for appellant.
Paul Cross, for respondent.

SCOTT, The defendant appeals from the determination of the Appellate Term affirming a judgment of the Municipal Court in favor of the plaintiff. The action is brought to recover the amount paid on a contract for the purchase of real estate. On June 4, 1904, the plaintiff entered into a written contract to purchase a lot of land from defendant for the sum of $300, of which $15 was paid on the execution of the contract, and the balance was to be paid in monthly installments of $5 each; the plaintiff being entitled to receive a deed when the whole purchase price should be so paid. The contract contained a clause by which it was agreed:

"That if default be made in fulfilling this agreement or any part thereof, on the part of the party of the second part [plaintiff herein], then and in that case the parties of the first part [defendant herein] and their assigns shall be at liberty to consider this contract forfeited and annulled, and dispose of the said land to any other person in the same manner as if this contract had never been made, and in such case the party of the second part hereby agrees to forfeit all the payment rights hereunder."

The plaintiff paid his installments of $5 per month regularly down to and including June 4, 1905, paying in all $110. According to the story told by plaintiff and his wife, he offered, through his wife, to pay a further installment of $5 in July and again in August and September, but the payment was refused by the person in charge of defendant's office, who told plaintiff's wife that plaintiff would be notified when the company was ready to receive further payments. The trial justice accepted this story, as we do, for the purpose of this appeal. The plaintiff apparently made no further efforts to pay install-

ments until April, 1906, when he sent to defendant a check for $5. At this time he owed on his contract nine installments of $5 each, or $45.

It appears that on February 6, 1906, a circular letter had been sent out to purchasers announcing a change in the management of the company, and stating that it was then in better financial standing than it had been for a long time. It further announced that the new board found upon the books a number of lot purchasers who were in arrears, and that a resolution had been passed that arrears must be paid up without delay, and, unless this was done, that steps would be taken to lapse the contracts according to the terms thereof. On March 10th a second notice seems to have been sent to plaintiff demanding the payment of arrears, and saying that unless payments were made by March 29, 1906, the contracts in default might be lapsed, and the money theretofore paid declared forfeited. It does not clearly appear whether plaintiff receiver either of these notices. On March 30, 1906, a third notice was sent stating that a resolution had been passed that all payments due under contracts must be paid on or before April 10, 1906, otherwise the contracts shall be declared null and void, and payments theretofore made forfeited. This notice was sent by registered letter, and apparently was not received by plaintiff, although shortly afterwards he sent a check for $5. In the letter returning this check, and which he certainly received, plaintiff was advised that he then owed nine installments, and that the company would not accept less than six months' payments at the present time, without prejudice to demanding the full number of payments due. Plaintiff apparently never paid or tendered anything more, or made any offer to do so, but on December 8, 1906, commenced this action to recover the $110 paid. The theory of the action appears to be that by refusing to accept the installments due in July, August, and September the defendant violated and repudiated its contract, and that thereby plaintiff was entitled to treat it as rescinded, and to recover back what had been paid on account of the consideration. It is quite clear that the refusal of the defendant to receive the July, August, and September installments did not constitute breaches of the contract so as to entitle the plaintiff to rescind and sue; for, while it was the plaintiff's duty to pay monthly, there was no reciprocal duty on the part of defendant to accept the payment, since such refusal could not damage plaintiff. The refusal did not amount to a repudiation or rescission of the contract, and that was not given as a reason for the refusal. Assuming, as true, all that plaintiff claims, the most that can be said for the refusal to accept payments of the installments, and that with some hesitation, is that it suspended his obligation to make further payments until he should be notified of defendant's readiness to receive them, which occurred when the letter of February 26, 1906, was received. Even with that concession the plaintiff was in arrears when he brought this action. The company certainly cannot be accused of having taken any unfair advantage. It gave him ample notice and opportunity to pay up, and he persistently refused to do so. When he sued, therefore, he was in the position of a vendee who has declined to pay the purchase money in the manner and at the times specified in the contract.

He has therefore no cause of action either to recover back the money already paid or to ask for damages for defendant's refusal to go on with the contract. What his rights might have been if he had claimed that the refusal to accept installments in July, August, and September suspended his obligation to pay further installments until he received notice from the company that it was prepared to receive such payments we do not now consider, since he did not take that position, and did not offer to continue payment in installments after he had received such notice.

The determination of the Appellate Term and the judgment of the Municipal Court must be reversed, and a new trial granted, with costs to the appellant in this court and the courts below to abide the event. All concur.